CROFF *v.* DeVRIES.

1. APPEAL AND ERROR—DIRECTED VERDICT.
  In reviewing judgment on directed verdict against plaintiff, every reasonable inference tending to support plaintiff's claim should be drawn.

2. MOTOR VEHICLES—NEGLIGENCE—PRINCIPAL AND AGENT.
  Evidence of arrangement between finance company's agent and automobile purchaser that latter should drive car to garage and leave it there until he had made past-due payment did not establish that finance company took possession and that purchaser was its agent in driving car to garage, rendering it liable for his negligent act.

3. MASTER AND SERVANT.
  Servant is one over whom master has control.

4. APPEARANCE—WAIVER—PROCESS.
  By entering general appearance and filing plea of general issue, defendant waived any defect or irregularity in service made upon him (3 Comp. Laws 1915, § 12430).

5. PROCESS—VALIDITY OF SERVICE RAISED BY MOTION TO DISMISS.
  Validity of service on defendant may be raised only by motion to dismiss (3 Comp. Laws 1915, § 12456).

Error to Kent; Brown (William B.), J. Submitted October 22, 1930. (Docket No. 125, Calendar No. 35,264.) Decided January 7, 1931. Rehearing denied February 27, 1931.

Case by Mary Emeline Croff, administratrix of the estate of Harry Vincent Yeakey, deceased, against Henry DeVries and General Motors Acceptance Corporation for the negligent killing of plaintiff's decedent. Directed verdict and judgment for defendants. Plaintiff brings error. Reversed as to defendant DeVries. Affirmed as to defendant General Motors Acceptance Corporation.

*Dunham, Cholette & Allaben,* for plaintiff.

*Amos F. Paley,* for defendant General Motors Acceptance Corporation.

SHARPE, J. Plaintiff's decedent, while walking across a street in the city of Grand Rapids, was struck by an automobile, driven by the defendant DeVries, and sustained injuries resulting in his death. The trial court directed a verdict for the defendant General Motors Acceptance Corporation on the ground that no legal liability attached to it for the negligence of DeVries. He also directed a verdict for DeVries. Plaintiff seeks review of the judgment entered by writ of error.

DeVries had purchased a second-hand automobile from the Thompson-Lockerby Company and had given a chattel mortgage on it to secure a part of the purchase price. The mortgage was duly assigned to the acceptance corporation. When but $5 remained unpaid thereon, a representative of the corporation, Earl London, called at the home of

DeVries one morning to secure payment of it. DeVries, called for cross-examination, testified:

"*Q.* Did you have any talk with Mr. London at that time about making a payment?

"*A.* Yes.

"*Q.* And Mr. London told you that you would have to take care of this back payment or he would have to take the car back, didn't he?

"*A.* No, not just exactly.

"*Q.* What did he say?

"*A.* Mr. London told me, he says, 'Now'—

"*Q.* Before you get to that, Mr. London told you, did he not, that he would have to take the car down to the Thompson-Lockerby garage, didn't he?

"*A.* No. Mr. London asked me if I would take the car down to the Thompson-Lockerby garage until I had that $5 paid.

"*Q.* He asked you to take the car down there, did he?

"*A.* Yes, sir.

"*Q.* And he told you he wanted you to leave the car down there until you had the balance paid, is that right?

"*A.* Well, I don't know. We made an agreement, together, see?

"*Q.* He asked you to take the car down to the Thompson-Lockerby Company, didn't he?

"*A.* Yes, sir; he asked me when I would do that.

"*Q.* And he asked you to leave the car there until you had made the payment, isn't that right?

"*A.* Yes, sir.

"*Q.* And he told you when you had the balance of the contract paid, you could get the car back, is that right?

"*A.* Sure.

"*Q.* And that until you paid the balance of the payments back, you could not get the car back?

"*A.* He didn't say nothing about that."

London, also called for cross-examination, testified:

"*Q.* Your work was not only to collect payments, but it was where you deemed it necessary to repossess cars that were in default?

"*A.* Yes.

"*Q.* Now, it is true in repossessing automobiles, you have done in the past, the car is ordinarily repossessed and placed in the garage where it was originally purchased; isn't that true?

"*A.* It is under ordinary conditions, yes.

"*Q.* Ordinarily that is true, isn't it?

"*A.* Yes. I went out alone to Mr. DeVries' home. I drove there in my car.

"*Q.* On this particular morning, you suggested to Mr. DeVries, that he take the car down to the Thompson-Lockerby garage, didn't you?

"*A.* Yes, that was their agreement.

"*Q.* And you so stated to him?

"*A.* I suggested it.

"*Q.* And you were the one who suggested the place where the car should be taken, weren't you?

"*A.* Not necessarily. We agreed upon that ourselves, Mr. DeVries was to take it to the Thompson-Lockerby.

"*Q.* But you were the one that suggested Thompson-Lockerby garage?

"*A.* Certainly.

"*Q.* So the car was taken to the Thompson-Lockerby garage because of your designating the place?

"*A.* It was not taken there.

"*Q.* I say, the designation of the Thompson-Lockerby garage was made by you, wasn't it?

"*A.* I would say yes.

"*Q.* In other words, you were the one who mentioned Thompson-Lockerby garage as the place where the car was to be taken; you asked that it be taken there.

"*A.* I suggested taking it there.

"*Q.* And you also suggested to him that the car should be left there until he had made the final payment?

"*A.* I didn't say anything about that. I told him that the car—that he should store his car there, and he could come up that afternoon and make the payment to our office.

"*Q.* You asked him to keep the car there, did you?

"*A.* I asked him to place the car there.

"*Q.* And to leave the car there until he made the final payment?

"*A.* There wasn't anything said about that.

"*Q.* What was said about final payment?

"*A.* He thought that it would be possible for him to have that that afternoon.

"*Q.* And you told him when he made the final payment you would go down and get the car; isn't that right?

"*A.* Well, I think that was necessary. He understood that."

To warrant us in reversing the judgment entered in favor of the acceptance corporation, we must hold that, based upon this testimony, the jury might have found as a fact that at the time of the collision it had possession of the car and that DeVries was acting as its servant or agent in driving it. Plaintiff had to rely on the testimony of DeVries and London to establish her claim in this respect. We should therefore draw every reasonable inference from their testimony tending to support it. They were both very cleverly cross-examined by plaintiff's counsel. But, when we carefully analyze their statements, we are forced to the conclusion, as was the trial court, that London did not take possession of the car at the home of DeVries. What was there

said amounted to no more than an arrangement between them that DeVries would drive his car to the garage and leave it there until he had paid the $5 yet due on the chattel mortgage. DeVries was in no way deprived of his possession of the car. London could not legally have taken possession of the car without the assent of DeVries. A servant is one over whom the master has control. The action of DeVries in driving the car to the garage was a voluntary one on his part. His failure to do so could not have resulted in his discharge from the service of the acceptance corporation, as the relation of master and servant did not exist.

Error is assigned upon the action of the court in directing a verdict in favor of the defendant DeVries and entering a judgment in his favor thereon. While the judgment as entered was the usual one in favor of both defendants, the trial court in directing such verdict stated that he did so "on account of lack of legal service."

DeVries was a resident of Ottawa county. The record does not disclose where service was made upon him, but the statement of the court would indicate that it was made in that county under the provisions of section 12430, 3 Comp. Laws 1915. He, however, entered a general appearance, and filed a plea of the general issue, and by so doing waived any defect or irregularity, if there was any, in the service made upon him. *Hempel* v. *Bay Circuit Judge,* 222 Mich. 553; *Fisher* v. *Fisher,* 224 Mich. 147. It would seem that the validity of the service in such cases can only be raised by a motion to dismiss. *Rosenthal* v. *Rosenthal,* 151 Mich. 493; *DeVelin* v. *Wayne Circuit Judge,* 211 Mich. 56.

The verdict and judgment in favor of DeVries will be set aside, with costs as against him, and a

new trial ordered. The judgment in favor of the acceptance corporation is affirmed, with costs against appellant.

Wiest, Clark, McDonald, Potter, North, and Fead, JJ., concurred. Butzel, C. J., did not sit.